**UNSEALED**
**PER ORDER**
2/20/2014

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION



United States Courts
Southern District of Texas
FILED

FEB 12 2014

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | **Criminal No.** |
| vs. | § | |
| | § | **14-0065** |
| ENYIBUAKU RITA UZOAGA, M.D., and | § | 18 U.S.C. § 2 |
| CHARLES HARRIS, a.k.a. | § | 18 U.S.C. § 1349 |
| CELESTINE NWAJFOR , a.k.a. | § | 18 U.S.C. § 1347 |
| OKECHI NWAJIOFOR, | § | |
| Defendants. | § | **UNDER SEAL** |

## INDICTMENT

THE GRAND JURY CHARGES:

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order.

### General Allegations

At all times material to this Indictment, unless otherwise specified:

### The Medicare and Medicaid Programs

1.      Medicare is a federally funded health insurance program designed to provide medical care to individuals over age 65 and individuals with disabilities. The Medicare payment system is composed of two divisions:   Medicare Part A (hospital insurance) and Medicare Part B (medical insurance).   Medicare Part A helps pay for inpatient hospital stays, skilled nursing facility services, home health services and hospice care.   Medicare Part B helps pay for physician services,

outpatient hospital services, medical equipment and supplies, and other health care services and supplies. Among the types of reimbursable medical assistance available to covered persons is vestibular testing.

2.     Although Medicare is a federal program, private insurance organizations, called intermediaries or carriers, contract with Medicare to process and pay claims submitted by health care providers. TrailBlazer Health Enterprises, LLC, of Dallas, Texas, has entered into a contract with Medicare to administer the Medicare Part B program for Texas. Providers, upon receipt of their provider number, receive procedure manuals, bulletins and updates regarding billing, including local coverage determinations. During the time frame of this indictment, these documents were mailed to providers and later were available online.

3.     The Medicaid program is a state-administered health insurance program funded by the United States Government and by the State of Texas. The Medicaid program helps pay for reasonable and necessary medical procedures and services provided to individuals who are deemed eligible under state low-income programs. The Texas Medicaid program is a cooperative federal-state program to furnish medical assistance to the indigent. Among the types of reimbursable medical assistance available to covered persons are vestibular testing and physical

therapy related to vestibular issues.

4.     The State of Texas contracts with Texas Medicaid & Healthcare Partnership (hereinafter referred to as TMHP) to process and pay claims submitted by health care providers.

5.     The Medicaid Program in Texas may pay a portion of a claim originally submitted to Medicare in the event the patient has both Medicare and Medicaid coverage.   This portion is generally 20 percent of the Medicare allowance for the billed charge.   Such claims are sent to Medicaid once processed by Medicare. Medicaid will pay its portion if Medicare originally allowed the claim.   If a Medicaid recipient is not also a Medicare beneficiary, the claims may be submitted directly to Medicaid.

6.     Medicare and Medicaid cover vestibular testing.   The following six billing codes represent the following vestibular diagnostic tests:

    a. Code 92541 is a spontaneous nystagmus test, which measures eye movement, with a recording.   This test is administered by watching lights in different sequences.   It is billed in one (1) unit.

    b. Code 92542 is a positional nystagmus test, with a minimum of four (4) positions, with a recording.   This test is administered by laying the patient down quickly with their head in different positions and with their head being lower than

their shoulders.    It is billed in one (1) unit.

c. Code 92543 is a caloric (warm and cool) vestibular test, usually involving the use of water irrigation.    It constitutes four (4) tests with a recording.    It is billed in four (4) units.

d. Code 92544 is the optokinetic nystagmus test, with a recording.    The patient watches a series of targets moving simultaneously to the right and left.    It is billed in one (1) unit.

e. Code 92545 is an oscillating tracking test, with a recording.    The patient watches lights in different, moving sequences.    It is billed in one (1) unit.

f. Code 92546 is a sinusoidal vertical axis rotational test using a rotating chair.    The test is usually performed in a darkened room, while lights are shown on a wall.    The patient wears goggles and sits in a chair with a safety harness.    It is billed in one (1) unit.

g. Code 92547 is the use of vertical electrodes, which are attached to the patient, as part of vestibular testing.    It is billed in one (1) unit.

7.    The following diagnostic codes may also be used as part of billing for vestibular test: 386.10, 386.12; 386.19.    In addition, the following physical therapy codes may be billed as well 97001, 97110, 97112, 97116, 97124, 97140, and 97750.

8.     Providers agree to retain all original source documentation and medical records for five years, which includes patient records and patient files.

9.     In order to bill Medicare or Medicaid, one must be an enrolled provider.

10.     Vestibular testing usually must be performed by a licensed physician, under the direct supervision of a licensed physician, or by a licensed audiologist, as defined by state and federal law, as well as by Medicare and Medicaid rules and regulations.   Physical therapy also must be performed by a licensed physical therapist, as defined by state and federal law, as well as by Medicare and Medicaid rules and regulations.

### The Defendants

11.     ENYIBUAKU RITA UZOAGA, defendant herein, is a licensed physician in Texas, doing business as Family Physician, P.A., located in Houston, Texas.

12.     CHARLES HARRIS, also known as Celestine Nwajfor, and also known as Okechi Nwajiofor, was doing business as CEVINE HEALTH CARE AND REHABILITATION CENTER (CEVINE), located in Houston, Texas, and as PATSTEL HEALTHCARE AND REHABILITATION SERVICES (PATSTEL), located in Houston, Texas.

## COUNT 1
## CONSPIRACY TO COMMIT HEALTH CARE FRAUD
## [18 U.S.C. § 1349]

1.    Paragraphs 1 through 12 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

2.    Beginning in or about January 1, 2005, the exact date being unknown, and continuing thereafter to in or about December 31, 2010, in the Houston Division of the Southern District of Texas and elsewhere, defendants

### ENYIBUAKU RITA UZOAGA, M.D. and
### CHARLES HARRIS, a.k.a. CELESTINE NWAJFOR, a.k.a. OKECHI
### NWAJIOFOR

did knowingly, intentionally, and willfully combine, conspire, confederate and agree with other persons known and unknown to the grand jury, to commit and aid and abet certain offenses against the United States:

a.    To violate the health care fraud statute, that is, to knowingly and willfully execute and attempt to execute, a scheme or artifice: (1) to defraud a health care benefit program affecting commerce, namely the Medicare and Medicaid programs; and (2) to obtain, by means of material false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody and control of, a health care benefit program, namely Medicare and Medicaid, in connection with the delivery of

6

and payment for health care benefits, items and services, namely vestibular testing and other services, in violation of Title 18 United States Code, Section 1347 (health care fraud statute).

## Object of the Conspiracy

3.     It was the object of the conspiracy for the defendants to become unlawfully enriched by falsely and fraudulently representing to Medicare and Medicaid that:

a.     Medicare and Medicaid beneficiaries needed and received repetitive diagnostic vestibular testing that, in fact, was not performed, was not medically necessary and/or not performed by a medically licensed person or a person supervised by a physician;

b. Medicare and Medicaid beneficiaries, some of them in group homes because of their disabilities, needed and received a type of physical therapy called "balance therapy", when in fact the therapy was not performed, not medically necessary and/or not performed by a medically licensed person or person supervised by a physician;

c.     Defendant UZOAGA, aided and abetted by others known and unknown, billed for diagnostic vestibular testing that, in fact, was not performed or supervised by Defendant UZOAGA, but performed by co-conspirator Defendant CHARLES HARRIS, who was not medically licensed, and/or medically unlicensed persons

employed by CHARLES HARRIS, and others known and unknown to the grand jury.

d.   Often vestibular testing billed, when in fact, some type of "balance training" was occasionally performed by individual who were not licensed or trained physical therapists.

### **Manner and Means**

4.   It was part of the conspiracy that:

a.   Defendants would and did routinely cause Medicare and Medicaid to be repetitively billed for various types of diagnostic vestibular testing on patients knowing that the services had not been performed and/or were not medically necessary.

b.   Some Medicare and Medicaid beneficiaries would and did tell investigators that they did not know who Defendant UZOAGA was, that they were never treated by her and never received the repetitive vestibular testing that was billed under Defendant UZOAGA's provider numbers.

c.   Defendant UZOAGA would and did routinely cause Medicare and Medicaid to be billed repetitively for various types of diagnostic vestibular testing which was not medically necessary on patients

without any follow-up care as a result of the repetitive diagnostic vestibular testing.

d. Defendant UZOAGA would and did receive R&S statements from Medicare and Medicaid reflecting all the vestibular testing billed under her provider number at all times during the indictment period.

e. Defendant HARRIS, and others known and unknown to the grand jury, were not licensed physicians, licensed audiologists, or licensed physical therapists, nor did they employee such licensed persons to perform medical services upon Medicare and Medicaid patients at any time during the time frame of the indictment.

f. Unindicted co-conspirators E. I. and C. I., beginning in and around 2009, would and did begin to perform some type of vestibular testing and balance training on Medicare and Medicaid beneficiaries, which was also billed under Defendant UZOAGA's Medicare and Medicaid provider numbers. E.I. and C.I. were not licensed physicians, licensed audiologists or licensed physical therapists, nor were they supervised by a licensed physician.

g. Defendants UZOAGA and HARRIS, and others known and unknown to the grand jury would and did submit "superbills" for vestibular

testing and physical therapy by and through UZOAGA and her medical biller, C.S.

h. Unindicted co-conspirators E. I. and C. I., would and did submit superbills for vestibular testing directly to Defendant UZOAGA and her staff, who in turn billed Medicare and Medicaid using an in-house biller.

i. Defendant UZOAGA would and did pay Defendant HARRIS, C.S., E.I. and C.I. and others known and unknown to the grand jury a portion of the Medicare and Medicaid funds paid to Defendant UZOAGA for the false vestibular testing and physical therapy.

j. Defendant HARRIS, and C.I. and E.I., and others known and unknown to the grand jury would and did perform some type(s) of unlicensed vestibular diagnostic testing by and through their businesses, but the testing was rarely performed as often as it was billed by UZOAGA, and when it was, it was not done by a licensed physician, a licensed audiologist, or under the supervision of a physician as required by Medicare and Medicaid.

k. Defendant HARRIS and C.I. and E.I., and others known and unknown to the grand jury would and did perform some type of unlicensed

"balance therapy" - performed by persons who were not licensed physical therapists as required by Medicare and Medicaid, but would routinely bill as if more expensive vestibular testing was repeatedly performed on beneficiaries.

l.  Defendants UZOAGA and HARRIS would and did submit "super bills" to biller C.S., using similar pre-printed forms containing the same seven vestibular codes and using the same diagnostic codes for every patient: 386.10, 386.12; 386.19.

m.  Unindicted co-conspirators C.I. and E. I. would and did submit "super bills" to Defendant UZOAGA using a pre-printed form containing the same seven vestibular codes and using the same diagnostic codes for every patient: 386.10, 386.12 and 386.19

n.  Defendant UZOAGA would and did sign a contract on or about May 1, 2006 with Defendant HARRIS to perform vestibular testing.

o.  Defendant UZOAGA would and did change to an in-house biller in 2009, and began submitting false vestibular billing performed by un-indicted co-conspirators, specifically, E.I. and C.I., who were doing business as a vestibular testing company.

p.  Defendant UZOAGA would and did write checks drawn on her Chase

bank account ending in the last four digits, x0951 to Defendant HARRIS and to other un-named co-conspirators, including E.I. and C.I., splitting the Medicare and Medicaid funds Defendant UZOAGA received as a result of the false and fraudulent vestibular testing and physical therapy billing scheme.

q. Defendant UZOAGA would and did receive remittance and status reports from both Medicare and Medicaid at all times during the timeframe of the indictment, reflecting the individual vestibular billing on each Medicare and Medicaid patient billed under her UPIN.

r. Defendant UZOAGA would and did pay Defendant HARRIS and HARRIS' business CEVINE approximately $111,225.14 from September 11, 2007 through June 24, 2009, as shown by checks from Chase bank account ending in the last four digits, x0951.

s. Defendant UZOAGA would and did pay un-indicted co-conspirators E.I. and C.I. approximately $28,970.76 from June 1, 2009 through May 19, 2010 through as shown by checks from her Chase bank account ending in the last four digits, x0951.

t. Defendant HARRIS, would and did send his employees who were not licensed physicians, licensed physical therapists, or licensed

audiologists, into patients' homes and/or group homes to perform some form of vestibular testing and/or balance training, which was unsupervised by a licensed physician.

u. Defendants UZOAGA and HARRIS, and un-indicted co-conspirators E.I. and C.I. would and did submit or cause to be submitted - via a computer - the results of alleged vestibular testing on Medicare and Medicaid patients to a neurologist in Florida, R.N. and/or a neurologist in Pennsylvania E.M., both of whom would evaluate the results and create a report.

v. Defendant UZOAGA would and did place a copy of the neurologists' reports interpreting the vestibular testing in some of her individual patient files.

w. The Florida physician's R.N. would and did receive a one-time fee of approximately $50 per patient evaluation and was unaware of the hundreds of vestibular codes billed on some patients by UZOAGA.

x. The Pennsylvania neurologist E.M. would and did receive a one-time fee of approximately $50 per patient evaluation paid by C.I. and E.I., and was unaware of the hundreds of vestibular codes billed on many patients by UZOAGA.

y.  Defendants UZOAGA and HARRIS would and did submit directly to biller C.S., using the same preprinted form or "super bill" with the same repetitive six vestibular codes, the same three diagnostic codes, with hand-written notes showing the dates of service for each alleged vestibular test, along with the particular patient's name, address, and Medicare beneficiary number.

z.  Defendants UZOAGA and HARRIS, and C.I. and E.I., and other known and unknown co-conspirators would not and did not collect or attempt to collect 20 percent co-pays from beneficiaries as required by Medicare as a result of the false vestibular and physical therapy claims.

aa. Defendants UZOAGA would and did submit vestibular testing claims on some of the same Medicare and Medicaid patients whom other physicians in the Houston area had also submitted vestibular testing during the time frame of the indictment, including but not limited to physicians E.N., A.E., and P.A.

bb. From approximately January 1, 2006 through December 31, 2010, UZOAGA would and did bill Medicare or cause Medicare to be billed, approximately $653,970.00 upon the seven vestibular testing and diagnostic codes, and was paid approximately $316,984.51.

cc. From January 1, 2005 through December 31, 2010, UZOAGA would and did bill Medicaid, based upon the seven vestibular codes, and was paid approximately $72,310.49.

### Overt Acts

5.    In furtherance of the conspiracy and to affect the objects thereof, the following overt acts, among others, were committed in the Southern District of Texas, and elsewhere,

a. On or about the Spring of 2005, UZOAGA became enrolled as a Medicare provider.

b. On or about the Spring of 2005, UZOAGA authorized Medicare to electronically deposit paid Medicare claims into her Chase bank account ending in the last four digits, x0951.

c. On or about June 10, 2005, UZOAGA became enrolled as a Medicaid provider.

d. On or about June 10, 2005, UZOAGA authorized Medicaid to electronically deposit paid Medicaid claims into her Chase bank account ending in the last four digits, x0951.

e. On or about May 1, 2006, UZOAGA and HARRIS, doing business as Cevine, entered into a signed agreement to conduct vestibular testing.

f.  On or about April 11, 2008 through May 8, 2009, Defendants UZOAGA and HARRIS caused Medicare to be billed $41,915 for patient A.R.G. representing 996 tests under seven codes for diagnostic vestibular testing that was not provided, not medically necessary and/or performed by unlicensed, unsupervised persons.

g.  On or about February 16, 2009 through May 28, 2009, Defendants UZOAGA and HARRIS caused Medicare to be billed $22,390 for patient G.W. representing 405 tests under seven codes for diagnostic vestibular testing that was not provided, not medically necessary and/or not performed by a licensed, supervised person(s).   Prior to UZOAGA's vestibular testing, physician A.E. and HARRIS, from on or about March 21, 2007 through January 21, 2009, caused Medicare to be billed $72,940.00 for 1,672 tests on patient G.W. under seven codes for diagnostic vestibular testing that was not provided, not medically necessary and/or not performed by a licensed, supervised person(s).

h.  On or about March 11, 2008 through May 7, 2009, Defendants UZOAGA and HARRIS caused Medicare to be billed $50,500 for patient F.B. representing 1,200 tests under seven codes for diagnostic vestibular testing that was not provided, not medically necessary and/or performed by

unlicensed, unsupervised persons.

i.  On or about March 22, 2007 through July 17, 2009, Defendants UZOAGA and HARRIS caused Medicare to be billed $33,970 for patient C.F. representing 794 tests under seven codes for diagnostic vestibular testing that was not provided, not medically necessary and/or performed by unlicensed, unsupervised persons

j.  On or about October 5, 2007 through January 23, 2008, Defendants UZOAGA and HARRIS caused Medicare to be billed $12,765 for patient M.M. representing 302 tests under seven codes for diagnostic vestibular testing that was not provided, not medically necessary and/or performed by unlicensed, unsupervised persons.

k.  In furtherance of the conspiracy, and to effect the objects thereof, the defendants performed and caused to be performed, among others, the acts set forth in Counts 2-7 of this Indictment, which are hereby re-alleged and incorporated as if fully set forth in this Count of the Indictment.

**In violation of Title 18, United States Code, Section 1349.**

## COUNTS 2-7
## HEALTH CARE FRAUD
## [18 U.S.C. §§1347 AND 2]

1.      Paragraphs 1 through 12 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

2.      Beginning in January 2005 and continuing thereafter to in or about December 2010, defendants identified herein, billed, caused to be billed, and aided and abetted the billing of false claims to Medicare and Medicaid for vestibular testing allegedly provided to Medicare and Medicaid beneficiaries, when in fact, the testing was not provided.   As a result of this unlawful scheme, Medicare and Medicaid were billed approximately  $653,970.00  in  submitted,  fraudulent  vestibular  claims,  with approximately $389,285.00 being paid.

### Purpose of the Scheme to Defraud

3.      It was the purpose of the scheme to defraud to obtain money from the Medicare and Medicaid programs by repetitively billing all seven vestibular codes, regardless of whether the services were performed, medically necessary and/or performed by an unlicensed, unsupervised person.

### Manner and Means

4.      Beginning on or about January 2005, and continuing thereafter in or about

December 2010, in the Houston Division of the Southern District of Texas, the defendants,

**ENYIBUAK RITA UZOAGA, M.D., and
CHARLES HARRIS, a.k.a. CELESTINE NWAJFOR, a.k.a. OKECHI
NWAJIOFOR**

as identified in the specific counts below, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program affecting commerce, namely Medicare and Medicaid, and to obtain by means of material, false and fraudulent pretenses, representations and promises, any of the money and property owned by, and under the custody and control of, a health care benefit program in connection with the delivery of and payment for health care benefits, items and services, to wit; on or about the listed dates, the defendant caused to be submitted false and fraudulent claims to Medicare for vestibular testing as indicated below:

## COUNTS 2-3

## Defendants UZOAGA AND HARRIS

| Ct | Patient Medicare/ Medicaid Number | Code | Dates of Service (on or about) | Amount Billed to Medicare | False representation (including but not limited to) |
|---|---|---|---|---|---|
| 2 | Medicare No. X0076A J.B. | Codes: 92541 92542 92543 92545 92546 92547 | 03-02-2009 | $505.00 Medicare; | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |
| 3 | Medicare No. X2948A E.T. | Codes: 92541 92542 92543 92545 92546 92547 | 04-27-2009 | $505.00 Medicare; | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |

## COUNTS 4-7
## Defendant UZOAGA

| 4 | Medicare No. X2948A E.T. | Codes: 92541 92542 92543 92545 92546 92547 | 04-05-2010 | $705.00 Medicare; | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |
|---|---|---|---|---|---|
| 5 | Medicare No. X4350A J.G. | Codes: 92541 92543 92546 92547 | 03-03-2010 | $375.00 Medicare; | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |
| 6 | Medicare No. X2948B B.T. | Codes: 92541 92543 92546 92547 | 04-19-2010 | $705.00 Medicare; | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |

| 7 | Medicare No. X3707A R.M. | Codes: 92541 92542 92543 92545 92546 92547 | 09-03-2009 | $505.00 Medicare; | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |

**All in violation of 18, United States Code, Sections 1347 and 2.**

## FORFEITURE
## [18 U.S.C. § 982(a)(7)]

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States gives notice to defendants

**ENYIBUAKU RITA UZOAGA , M.D.**
**and**
**CHARLES HARRIS, a.k.a.**
**CELESTINE NWAJFOR ,**
**a.k.a OKECHI NWAJIOFOR**

that upon conviction of conspiracy in violation of Title 18, United States Code, Section 1349, or of a violation of Title 18, United States Code, Section 1347, all property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to such offenses, is subject to forfeiture.

## Money Judgment

Defendants are notified that upon conviction, a money judgment may be

imposed equal to the total value of the property subject to forfeiture..

## **Property Subject to Forfeiture**

The property subject to forfeiture includes, but is not limited to, the following property:

(1) $389,285.00 or more, in gross proceeds obtained from the conspiracy charged in Count 1 of the Indictment.

(2) all money obtained from the scheme to defraud, as charged in any of counts Counts 2-7 of the Indictment.

## **Substitute Assets**

Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of defendants,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendant up to the total value of the property subject to forfeiture, pursuant to Title 21,

United States Code, Section 853(p) incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

BY: _____
Suzanne Bradley
Special Assistant United States Attorney

Kebharu Smith
Assistant United States Attorney